IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE MORAN, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0813 |
| | § | |
| CEILING FANS DIRECT, INC., | § | |
|     Defendant. | § | |

**<u>MEMORANDUM AND ORDER</u>**

The issue to be decided at this stage of this Fair Labor Standards Act ("FLSA") case is whether an employer can place copies of an arbitration policy it seeks to implement on a table in the employees' break room, request that each employee take a copy but not verify that each employee complies, and then rely on the employee's return to work the next day as that employee's agreement to be bound by the arbitration policy to preclude litigation of a claim that the employer knew arose prior to implementation of the policy. The issue is presented in the Motion to Compel Arbitration [Doc. # 3] filed by Defendant Ceiling Fans Direct, Inc. ("CFD"). Based on the Court's review of the record and the evidence presented at a hearing on August 22, 2006, the Court concludes that the employer cannot implement a binding arbitration policy in this manner. Consequently, the Court **denies** CFD's Motion to Compel Arbitration.

**I.      FINDINGS OF FACT**

Plaintiffs Jose Moran and Kelly Simmons were employed by Defendant CFD as ceiling fan installers, installing ceiling fans primarily in newly-constructed buildings. Prior to December 28, 2005, CFD through Darrell Ellefson, its General Manager and President, was aware of an investigation by the Department of Labor ("DOL") into CFD's alleged failure to pay to its employees the overtime compensation required by the FLSA. Prior to December 28, 2005, Plaintiffs each received a letter from the DOL advising them of the DOL investigation. Also prior to December 28, 2005, Ellefson had conversations with Moran and Simmons regarding their entitlement to overtime compensation. During each conversation, Ellefson assured Moran and Simmons that he would take care of them in connection with the overtime compensation. Moran perceived that Ellefson was attempting to dissuade him from formally pursuing his claim for overtime compensation.

At the suggestion of and with the assistance of counsel, CFD drafted a new arbitration policy. *See* "Notice to All Employees of Ceiling Fans Direct, Inc. of Dispute Resolution Program" ("Arbitration Policy"), Hearing Exh. 1. The Arbitration Policy contains an effective date of December 28, 2005 and purports to cover all disputes "arising out of or relating to" any aspect of the employment relationship between the employee and CFD. *See id.* The Arbitration Policy provides that an

employee by continuing to work for CFD was "deemed to have accepted the terms of this dispute resolution program." *Id.*

Ellefson conducted a meeting with CFD's employees on December 28, 2005 ("December 28 Meeting").[1] The meeting took place in the employees' break room. The break room is a very small area, and approximately 8-10 employees were present. Most of the employees were seated, and they frequently talked aloud among themselves and at the same time.

The Court finds that the first topic discussed at the December 28 Meeting was an upcoming change in the manner in which CFD employees would be paid. Ellefson stated that the employees would be receiving more money under the new pay method and stated that he would meet with each employee individually the next day to explain how the pay change would affect that employee.

The next topic at the December 28 Meeting involved a discussion of problems with certain service calls and areas for improvement by the installers. There was a stack of copies of the list of service call problems available for the employees' review.

---

[1] Ellefson testified that the December 28 Meeting took place early that morning, while Moran and Simmons recall that the meeting occurred in the afternoon. The Daily Scheduling Logs, Hearing Exhibit 5, introduced by Defendant indicates that Moran left the CFD office at 8:08 a.m. on December 28, 2005, and returned to the office that afternoon at 2:30 p.m. The documentation, therefore, supports both versions. The Court finds, in any event, that the time of the meeting is not material to the decision in this case.

The final topic discussed at the December 28 Meeting was the new Arbitration Policy. Ellefson had placed copies of the Arbitration Policy in a stack on the table in the break room and invited each employee to take one. Some employees complied and some, including Plaintiffs, did not. Ellefson made no effort to ensure that each employee took a copy of the Arbitration Policy. Other than some joking around involving what was described as good-natured racial slurs, Ellefson did not explain the terms of the Arbitration Policy.[2] The employees then began talking at once regarding the pay change and the Arbitration Policy. At least one employee wadded up his copy of the Arbitration Policy. Other employees, including Simmons, stated in Ellefson's presence that they were "not signing that." Ellefson laughed and said it did not matter, they could not sue CFD.

A copy of the Arbitration Policy was provided with the employee's next pay check.

Some days after the December 28 Meeting, Simmons told Ellefson during a conversation in the warehouse that he would not sign the Arbitration Policy. Ellefson told him not to worry about it.

---

[2] Ellefson testified that he read and explained the Arbitration Policy during the December 28 Meeting but the Court does not credit that testimony. As is discussed in more detail below, the record indicates that Ellefson did not have a clear understanding of the Arbitration Policy and, as a result, could not have given a clear explanation of its terms.

In early January 2006, CFD distributed a new Employee Handbook. *See* Employee Handbook ("Handbook"), Hearing Exh. 2. The Handbook contains the "arbitration provision" from the Arbitration Policy. *See id.* at 21. The Handbook also contains an "Acknowledgment by Employee" form. *See id.* at 23. The form provides a line for the employee to sign acknowledging that he has "agreed to abide by the Dispute Resolution Program." *See id.* The form reads at the bottom of the page: "Page to be signed and returned to the President for placement in the personnel file." *Id.* It is undisputed that CFD did not require that the employees sign and return the form. It is also undisputed that no employee – including Ellefson – returned the signed form to CFD. In contrast, each employee was required to initial their agreement to the company's written policy on drug and alcohol use at the work place. *See id.* at last unnumbered page.

The Arbitration Policy, as reflected both in Hearing Exh. 1 and in the Handbook, provides that "CFD retains the right to amend, modify or discontinue this dispute resolution program through additional written notice at any time." *See* Arbitration Policy; Handbook, at 21. By a memo to all CFD employees dated April 27, 2006, however, Ellefson stated that it was "not true" that the Arbitration Policy "can be changed or discontinued at anytime [*sic*]." *See* April 27, 2006 Memo, Hearing Exh. 3. As a result, Ellefson's written explanation of the Arbitration Policy was in conflict with

the terms of the Arbitration Policy as set forth in the separate notice sheet and in the Handbook.

Plaintiffs Moran and Simmons filed this lawsuit on March 9, 2006. After Ellefson learned of the lawsuit, he had a discussion with Moran and Simmons in the CFD office parking lot. During the conversation, Ellefson said that the company was in poor financial condition, that the lawsuit would be a "death blow" to the company, that CFD owed overtime compensation, that he would take care of Moran and Simmons, that if the company "went under" none of them would have a job, that the lawyers would be the only ones to receive any money from the lawsuit, and that the employees should not "bite the hand that feeds" them. At no point during the conversation did Ellefson say that their claim for overtime compensation was subject to the Arbitration Policy.

Both Plaintiffs subsequently resigned from employment with CFD.

Defendant moved to compel arbitration of Plaintiffs' claims in this lawsuit. The motion has been fully briefed, was the subject of an evidentiary hearing on August 22, 2006, and is ripe for decision.

## II.   **APPLICABLE LEGAL STANDARDS**

"Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *PaineWebber Inc. v.*

*The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  Therefore, the Court must first determine whether there is a valid agreement between the parties to arbitrate their dispute.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted).  In deciding whether the parties entered into a valid agreement to arbitrate, the Court applies general contract principles.  *Id.*  An essential element for the formation of a valid and binding contract is a "meeting of the minds."  *See Palestine Water Well Services, Inc. v. Vance Sand and Rock, Inc.*, 188 S.W.3d 321, 325 (Tex. App. – Tyler 2006); *Roman v. Roman*, 193 S.W.3d 40, 50 (Tex. App. – Houston [1st Dist.] 2006).  "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and essential terms of the contract.  *Weynand v. Weynand,* 990 S.W.2d 843, 846 (Tex.App. – Dallas 1999, pet. denied).

Under Texas law, "when an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the

changes, he has accepted the changes as a matter of law." *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (quoting *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986); *see In re Dillard Dept. Stores, Inc.*, __ S.W.3d __, 2006 WL 508629 (Tex. Mar. 3, 2006). An employer asserting an arbitration agreement must prove both notice of the agreement and acceptance by the employee. *See id.*; *Halliburton*, 80 S.W.3d at 568 (citing *Hathaway*, 711 S.W.2d at 229). To prove notice, the employer must prove that it unequivocally notified the employee of the definite changes in the arbitration agreement. *See id.* If the employee receives adequate notice and continues working with knowledge of the arbitration agreement and its terms, "the employee accepts them as a matter of law." *See id.*

### III.   **ANALYSIS**

CFD's first burden is to prove that it gave Plaintiffs and the other CFD employees adequate notice of the Arbitration Policy and its terms. Defendant has failed to satisfy this burden. The Arbitration Policy was presented on a table in the break room. Although the employees were invited to take a copy, the Arbitration Policy was not distributed to each employee on December 28, 2005. There was no requirement for each employee to take one.

The Court finds that Ellefson, CFD's representative to the employees, did not have a clear understanding of the terms of the Arbitration Policy. Except for the racial

remark made jokingly about the employees not being able to "sue this ni**er," Ellefson did not explain the Arbitration Policy to the employees. He did not read the Policy to the employees. Although the Handbook contained a form for CFD's employees to sign acknowledging the validity of the Arbitration Policy, Ellefson neither signed the form nor required any employee to sign and return the form. Ellefson repeatedly told Plaintiffs that he would take care of them. When Simmons advised Ellefson that he would not sign the Arbitration Policy, Ellefson told him not to worry about it. As a further example of Ellefson's lack of understanding, in April 2006 he gave the employees a written statement regarding the Arbitration Policy that was in conflict with the terms of the Arbitration Policy.

In conclusion, Defendant has not shown that it gave Plaintiffs and the other CFD installers unequivocal notice of the specific terms of the Arbitration Policy.

Even if CFD were able to show that it gave Plaintiffs clear notice of the terms of the Arbitration Policy, CFD would then need to prove Plaintiffs' acceptance of those terms. Defendant argues correctly that, as a general rule, when an employer institutes an arbitration policy that applies to at-will employees, an employee agrees as a matter of law to that policy by continuing to work for the employer.[3] *Halliburton*, 80 S.W.3d 568 ("when an employer notifies an employee of changes to the at-will employment

---

[3] For this part of the analysis, the Court presumes that the employee received adequate notice of the terms of the arbitration agreement,

contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.'"). In *Halliburton*, the Texas Supreme Court noted that, on the facts there presented, it was not "a case in which the written notice was contradicted by other written or oral communications between the employer and the employee." *Halliburton*, 80 S.W.3d at 569. The circumstances at bar, however, present just such a case. The written notice regarding acceptance by continued employment was contradicted by the employees' statements that they did not agree to the Arbitration Policy and their failure to sign and return the acknowledgment form in the Handbook. The written notice regarding acceptance is also contradicted by Ellefson's instructions for the employees to meet with him the next day to discuss the pay change and its impact on their total pay. The written notice regarding the Arbitration Policy was contradicted when Simmons told Ellefson that he was not going to sign the Arbitration Policy and Ellefson responded "don't worry about it." The written notice regarding modification to the Arbitration Policy is contradicted by Ellefson's April 27, 2006 Memo. Even after Plaintiffs filed this lawsuit, Ellefson's various efforts to dissuade them from pursuing this litigation did not include reference to the Arbitration Policy. Plaintiffs and many other employees made it clear to Ellefson that they did not agree to the terms of the Arbitration Policy, and CFD allowed them

to continue to work.  It is clear from the evidence in the record that there was no meeting of the minds regarding the Arbitration Policy.

Even if Defendant were able to prove the existence of an enforceable arbitration agreement in this case, Defendant has not shown that the Arbitration Policy applied to Plaintiffs' preexisting claims for overtime compensation under the FLSA.  It is undisputed that Plaintiffs' FLSA claims arose prior to December 28, 2005, and that Ellefson was aware of Plaintiffs' claims that they were entitled to overtime compensation.  The Arbitration Policy does not specifically include preexisting claims.  The Arbitration Policy was a unilaterally established policy, and it is clear that Plaintiffs did not affirmatively agree to give up their then-existing right to file a lawsuit under the FLSA for their unpaid overtime compensation.  The Arbitration Policy provides that it applies to disputes "arising out of" the employment relationship.  *See* Arbitration Policy, Hearing Exh. 1.  The word "arising" means "coming into being" and "suggests events that have not yet 'come into being.'"  *See In re Brookshire Brothers, Ltd.*, __ S.W.3d __, 2006 WL 1985445 (Tex. App. – Texarkana, 2006).  Even if there had been adequate notice and even if Plaintiffs are deemed to have accepted the Arbitration Policy, Plaintiffs only accept "what the document states is arbitrable." *See id*.  Because the language in the Arbitration Policy indicates that the language "was meant to apply only to future events, it is proper to conclude with assurance that [CFD] and [Plaintiffs]

did not intend to arbitration disputes occurring before the effective date of the arbitration policy." *Id.* Although Plaintiffs had not filed their lawsuit as of December 28, 2005, it is undisputed that their claims had arisen by that date and that they had discussed their claims with CFD. The Court concludes that the Arbitration Policy, even if effective and enforceable, does not include an agreement to arbitrate Plaintiffs' existing claims for FLSA overtime compensation.

## IV. **CONCLUSION AND ORDER**

CFD failed to give its employees unequivocal notice that it was implementing an arbitration policy and that an employee agreed to be bound by the arbitration policy if he continued to work for CFD. The employees, on the other hand, communicated unequivocally to CFD that they did not accept the arbitration policy. Specifically, the employees stated verbally that they did not agree to the terms of the arbitration policy and did not sign and return the acknowledgment page of the arbitration policy in the Handbook. Absent proof of adequate notice and acceptance, Defendant and Plaintiffs did not have an enforceable arbitration agreement. Even if Plaintiffs had notice of the arbitration policy described by Hearing Exhibit 1 and agreed to its terms, it did not apply to preexisting claims of which the employer had notice. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Compel Arbitration [Doc. # 3] is **DENIED**.

SIGNED at Houston, Texas, this **25th** day of **August, 2006**.

Nancy F. Atlas
United States District Judge